739 S.E.2d 631

**Willie Lee SIMMONS, Appellant,**

v.

**SC STRONG, Employer, and Hartford Underwriters Insurance Company, Carrier, Respondents.**

Appellate Case No. 2012–207088.

No. 5087.

Court of Appeals of South Carolina.

Heard Dec. 10, 2012.

Decided Feb. 20, 2013.

Rehearing Denied March 22, 2013.

Cynthia Barrier Patterson, of Columbia, and David Dusty Rhoades, of Charleston, for Appellant.

Kathryn Rose Fiehrer, of Wood & Warder, LLC, of Charleston, for Respondents.

LOCKEMY, J.

Willie Lee Simmons argues the Appellate Panel of the South Carolina Workers' Compensation Commission (Appellate Panel) erred in failing to find he was an employee of SC STRONG. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Simmons was a participant in the SC STRONG program. SC STRONG is a residential, non-profit organization in which "former substance abusers, ex-convicts, and homeless adults" are provided with educational and vocational opportunities. Simmons began participating in the SC STRONG program in May 2010 as a condition of his probation.[1] On May 18, 2010, Simmons signed a Resident Statement, which provided:

(1) Any remuneration which was, or in the future will be, due because of work which I have performed, or will perform, for South Carolina STRONG, I donate to South Carolina STRONG. This donation is done freely, and without duress.

(2) Any work, which I have done, or will do, for South Carolina STRONG, is done as a volunteer without any expectation of remuneration.

---

1. Simmons pled guilty to two counts of second-degree burglary in March 2009. Simmons requested he be allowed to participate in the SC STRONG program at the time of his plea.

(3) Not withstanding paragraphs (1) and (2) above, if any governmental body determines that I am not a volunteer or cannot donate to South Carolina STRONG any remuneration which might be due to me from South Carolina STRONG, then I state that I was more than adequately paid by room, board, and services that I received from South Carolina STRONG including counseling, vocational training, entertainment, clothing, medical and dental services, education, rehabilitation, transportation, recreational and legal services, which have, and will be, provided to me by South Carolina STRONG free of charge for the duration of my time as a resident of South Carolina STRONG.

As a SC STRONG participant, Simmons worked at various landscaping and construction projects at the direction of SC STRONG. On January 14, 2011, Simmons slipped on ice and fell thirty feet off a roof at a SC STRONG jobsite. Simmons was treated at the Medical University of South Carolina (MUSC). A cervical CT scan revealed Simmons suffered a C–5 anterior superior end plate fracture. Additionally, Simmons's head CT scan revealed a soft tissue laceration/hematoma over the left frontal bone. Simmons received staples for his forehead laceration. On January 15, 2011, Simmons returned to the emergency room complaining of foot pain and facial swelling. Simmons was given oxycodone and a hard cervical collar. The instructions provided by MUSC required Simmons to wear the collar at all times to protect his neck while his "compression fracture" healed. The instructions further noted that Simmons's fracture was "not serious" and he could "expect to fully recover within a few weeks."

On February 17, 2011, Simmons filed a Form 50 alleging he injured his head and cervical spine in the course of his employment with SC STRONG. Simmons requested temporary total disability benefits at a rate based on a similar employee. On March 2, 2011, Hartford Underwriters Insurance Company (Hartford), SC STRONG's insurance carrier, filed a Form 51 wherein it denied Simmons was an employee of SC STRONG and sustained a compensable injury arising out of employment with SC STRONG. On March 16, 2011, Hartford and SC STRONG (collectively Respondents) filed an

amended Form 51 again alleging Simmons did not sustain a compensable injury in the course of his employment as alleged. Respondents filed a second amended Form 51 on April, 25, 2011, adding a denial that Simmons was an employee of SC STRONG.

A hearing was held before the single commissioner on May 25, 2011. At the hearing, Simmons testified he was provided room, board, and daily work instructions by SC STRONG. Simmons further testified he worked six days a week and was performing work for SC STRONG when he fell on January 14, 2011. According to Simmons, he was forced to leave SC STRONG after he contacted an attorney following his accident.

John Tecklenburg, President of SC STRONG's Board of Directors, testified SC STRONG has only two employees: John Glemser, the executive director, and John Hamilton, the co-executive director and vocational training supervisor. According to Tecklenburg, SC STRONG receives compensation for the construction services provided by its participants. Tecklenburg stated the SC STRONG model "involves a sustainable concept whereby the work training that we do for our residents is utilized as an enterprise to help generate funds that run the organization." Tecklenburg testified the food, clothing, and shelter provided to Simmons as a SC STRONG participant were not provided in lieu of wages. Additionally, Hamilton testified participants are provided with tools and given work assignments by SC STRONG and are not allowed to seek independent work while enrolled in the program. Hamilton further testified SC STRONG participants do not have any expectation of wages.

Following the hearing, the single commissioner found Simmons was not entitled to workers' compensation benefits because he was a volunteer and/or gratuitous worker and not an employee of SC STRONG. In his finding of fact number six, the single commissioner noted Simmons would have been entitled to temporary total disability benefits had he been an employee of SC STRONG but reiterated Simmons was not an employee. Following a hearing in November 2011, the Appellate Panel affirmed the single commissioner on December 20, 2011. The Appellate Panel adopted the single commissioner's

order with the exception of finding of fact number six. This appeal followed.

## STANDARD OF REVIEW

 "The existence of an employer-employee relationship is a factual question that determines the jurisdiction of the Workers' Compensation Commission." *Shuler v. Tri–County Elec. Co-op., Inc.*, 374 S.C. 516, 520, 649 S.E.2d 98, 100 (Ct.App.2007), *aff'd*, 385 S.C. 470, 472, 684 S.E.2d 765, 767 (2009). "When an issue involves jurisdiction, the appellate court can take its own view of the preponderance of the evidence." *Id.* "In determining jurisdictional questions, doubts of jurisdiction will be resolved in favor of inclusion of employees within workers' compensation coverage rather than exclusion." *Id.*

## LAW/ANALYSIS

Simmons argues he was an employee of SC STRONG and thus entitled to workers' compensation benefits. We disagree.

 Under the Workers' Compensation Act, an employee is defined as

every person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written, ... whether lawfully or unlawfully employed, but excludes a person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer. . . .

S.C.Code Ann. § 42–1–130 (Supp.2012). "To be considered an employee under a contract of hire pursuant to section 42–1–130, a person must have a right to payment for his services." *Shuler v. Tri–County Elec. Co-op, Inc.*, 385 S.C. 470, 473, 684 S.E.2d 765, 767 (2009) (citing *Kirksey v. Assurance Tire Co.*, 314 S.C. 43, 45, 443 S.E.2d 803, 804 (1994) (finding unpaid daughter of store owner not an employee)); *see also Doe v. Greenville Hosp. Sys.*, 323 S.C. 33, 39–40, 448 S.E.2d 564, 567–68 (Ct.App.1994) (holding an unpaid volunteer candy striper was not the employee of a hospital); *McCreery v. Covenant Presbyterian*, 299 S.C. 218, 223–24, 383 S.E.2d 264, 267 (1989) (finding an unpaid church volunteer not an employee of the church for workers' compensation purposes), *rev'd on other grounds*, 303 S.C. 271, 400 S.E.2d 130 (1990).

Here, the Appellate Panel, relying on *Shuler, Kirksey,* and *McCreery,* found Simmons was a volunteer and/or gratuitous worker. The Appellate Panel held the term "contract of hire" connoted payment and "a worker who neither receives nor expects payment for his services is not generally considered an employee within the definition." On appeal, Simmons maintains that although he did not receive any monetary payments for the work he performed as a SC STRONG participant, he received benefits from SC STRONG for his work in the form of housing, clothing, and food.

We find Simmons was a volunteer/gratuitous worker. Simmons neither received nor expected to receive any kind of pay for his services. Pursuant to his Resident Agreement, Simmons acknowledged he was a volunteer and was not owed any remuneration for his services. Furthermore, the room and board Simmons received as a SC STRONG participant were not provided as payment for his work. Rather, Simmons, as well as all of the other SC STRONG participants, were provided a residential setting to "develop their strengths through learning—and teaching—academics and vocational skills, as well as personal, interpersonal, and practical 'survival skills.'" As a SC STRONG participant, Simmons was learning skills to aid in his transition into the working world. Simmons was not performing services as an employee of SC STRONG; rather, he was performing services as a volunteer in a rehabilitative program to improve his skills and avoid incarceration.

Simmons relies on *Wilson v. Georgetown County,* 316 S.C. 92, 447 S.E.2d 841 (1994) to support his position that South Carolina does not require a particular form of payment to establish an employee/employer relationship. In *Wilson,* the circuit court allowed Wilson, who informed the court he could not sit on a jury because of his religious beliefs, to perform janitorial services in lieu of jury service. *Id.* at 93, 447 S.E.2d at 842. Wilson was injured when he slipped and fell while washing the courthouse windows. *Id.* Our supreme court found Wilson was an employee of Georgetown County when he fell because the work he was performing was for the benefit of the County, and he was under the direction and control of the Clerk of Court. *Id.* at 94, 447 S.E.2d at 842–43. Here, Simmons argues SC STRONG billed its customers for the services he performed, and therefore, his work was for the

benefit of SC STRONG. We find *Wilson* is distinguishable from the present case. The circuit court required Wilson to perform janitorial services in lieu of jury service. Simmons was an admitted volunteer who chose to participate in the SC STRONG program in lieu of serving his prison sentence.

█ For the foregoing reasons, we find Simmons was not an employee of SC STRONG. Therefore, we affirm the Appellate Panel's determination that Simmons was not entitled to workers' compensation coverage.[2]

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.

---

**2.** Simmons also argues he was an apprentice in the SC STRONG program, and thus, he was entitled to workers' compensation coverage. This argument is not preserved for our review because (1) Simmons raises this argument for the first time in his reply brief and (2) it was not ruled upon by the Appellate Panel. *See Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund,* 389 S.C. 422, 431, 699 S.E.2d 687, 691 (2010) (holding an issue is not preserved for appellate review if it was not ruled upon by the Appellate Panel); *Glasscock, Inc. v. U.S. Fid. & Guar. Co.,* 348 S.C. 76, 81, 557 S.E.2d 689, 692 (Ct.App.2001) (holding an argument made in a reply brief cannot present an issue to the appellate court if it was not addressed in the initial brief).